[Cite as *Jenkins v. Jenkins*, 2014-Ohio-4407.]

### IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### GREENE   COUNTY

| | | |
|---|---|---|
| HOFIT JENKINS | : | |
| | : | Appellate Case No. 2014-CA-18 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2013-FS-2 |
| v. | : | |
| | : | |
| AVRAHAM JENKINS | : | (Civil Appeal from Common Pleas |
| | : | Court, Domestic Relations) |
| Defendant-Appellant | : | |
| | : | |

· · · · · · · · · ·

O P I N I O N

Rendered on the 3rd day of October, 2014.

· · · · · · · · · ·

CHRISTOPHER A. MURRAY, Atty. Reg. #0059357, 61 Greene Street, 2nd Floor, Xenia, Ohio 45385
        Attorney for Petitioner-Appellee

JOSEPH C. LUCAS, Atty. Reg. #0081336, and JOHN R. GLANKLER, Atty. Reg. #0089941, Law Office of Joseph C. Lucas, LLC, 61 North Dixie Drive, Suite B, Vandalia, Ohio 45377
        Attorney for Respondent-Appellant

· · · · · · · · · · · ·

HALL, J.

{¶ 1}    Avraham Jenkins appeals from the trial court's registration and enforcement of a child-support order from Israel.

{¶ 2}    Mr. Jenkins advances three assignments of error on appeal. First, he contends

the trial court erred in relying on the principle of "comity" to enforce the order. Second, he claims the order's terms are unconstitutional and should not have been enforced. Third, he asserts that the order should not have been enforced because it did not grant an "offset" to account for expenses he incurs raising the parties' other child in Ohio. The appellee, Hofit Jenkins, has not filed an appellate brief.

{¶ 3} The record reflects that the parties married in Israel and immigrated to the United States with their young son in 2007. Their relationship deteriorated, however, and the appellee returned to Israel alone later that year. While in Israel in 2008, the appellee gave birth to the parties' second child, a daughter, who had been conceived in the United States. Thereafter, the parties obtained a divorce in Israel. The divorce became final in 2009. The final decree imposed a child-support obligation on Mr. Jenkins, who at all relevant times has continued to live in the United States with the parties' son.

{¶ 4} In April 2013, the appellee sought to register the foreign child-support order under Ohio's version of the Uniform Interstate Family Support Act, R.C. 3115.01 et seq. (Doc. #1). The trial court registered the order while giving Mr. Jenkins an opportunity to contest its validity or enforcement. (Doc. #2). Over Jenkins' objection, the trial court later confirmed its registration of the order while apparently intending to preserve his opportunity to challenge enforcement. With regard to enforcement, the trial court scheduled an evidentiary hearing. (Doc. #8). Prior to the hearing, Mr. Jenkins filed a written challenge to the order. He argued, among other things, (1) that enforcement of the order would violate his constitutional rights because its terms were based on his Jewish religion and his gender and (2) that the order should not be enforced because it failed to grant him an offset for his expenses raising the parties' son.  (Doc.

#9).

**{¶ 5}** A magistrate held an enforcement hearing in October 2013. Following the hearing, the magistrate filed a two-page decision that did not specifically address Mr. Jenkins' arguments. The magistrate simply found that the Israeli support order could not be modified in Ohio and that it was entitled to enforcement pursuant to a written Memorandum of Understanding between the governments of the United States and Israel. (Doc. #12). Mr. Jenkins objected to the magistrate's decision, reasserting his arguments about the enforceability of the foreign order.[1] (Doc. #13).

**{¶ 6}** On April 3, 2014, the trial court overruled Mr. Jenkins' objections and adopted the magistrate's decision with modifications including statutory analysis and a discussion of Mr. Jenkins' legal arguments. (Doc. #18). With regard to Mr. Jenkins' constitutional challenge, the trial court stated that it was enforcing the support order "as a matter of [c]omity." (*Id*. at 3). As for the offset issue, the trial court reasoned: "The Israeli Court determined Respondent's child support obligation for the minor child in the Petitioner's care. The Respondent may find the child support offset he is seeking by filing [Uniform Interstate Family Support Act] action through CSEA or by contesting the terms of the Israeli decision in a Court with proper jurisdiction. He was instructed to pursue this course of action in [a] March 18, 2010 Montgomery County Juvenile Court Decision."[2] (*Id*. at 3-4).

---

[1] The record below includes an affidavit from Mr. Jenkins' counsel explaining that no recording was made of the October 2013 hearing before the magistrate. Therefore, no transcript was filed with the objections. (Doc. #15). In a subsequent filing, Mr. Jenkins took the position that no transcript was necessary in any event because he was raising legal questions and not objecting to any of the magistrate's factual findings. (Doc. #16).

[2] The juvenile court decision the trial court referenced is not part of the record before us.

{¶ 7} In his first two assignments of error, Mr. Jenkins contends the trial court erred in enforcing the Israeli support order as a matter of "comity" and in rejecting his challenge to the constitutionality of the order. More specifically, he notes that "comity" has been described as involving recognition of a foreign decree "as a matter of courtesy rather than of right." *Kalia v. Kalia*, 151 Ohio App.3d 145, 2002-Ohio-7160, ¶ 24 (11th Dist.). Mr. Jenkins argues that comity has no place here because enforceability of the Israeli order is governed by the Memorandum of Understanding mentioned above and by R.C. 3115.44(A)(5).

{¶ 8} The federal-level Memorandum of Understanding was entered into by representatives of the United States and Israel in 2009. The relatively brief document, which remains in effect, essentially provides that each country will endeavor to recognize and enforce support orders from the other country.[3] Although the language of the document is generally broad, a provision upon which Mr. Jenkins relies provides: "This MOU shall be implemented and enforced solely by the States' domestic laws." Mr. Jenkins notes that one such domestic law in Ohio is R.C. 3115.44(A)(5). This statute provides: "A party contesting the validity or enforcement of a registered order * * * has the burden of proving one or more of the following defenses: (5) There is a defense under the law of this state to the remedy sought."

{¶ 9} As a defense to enforcement under R.C. 3115.44(A)(5), Mr. Jenkins argues that the Israeli support order violates his rights under the Ohio and federal Constitutions. In particular, he argues that the order's terms raise equal-protection and establishment-clause concerns because they are based on his Jewish religion and his male gender. In relevant part, the Israeli order (which was translated from Hebrew to English below) provides:

---

[3] A copy of the Memorandum of Understanding, which is available from multiple sources online, is attached to Mr. Jenkins' appellate brief at Appendix C.

5. The origin of the obligation for child support is stated in Section 3 of Family Law Amendment (Maintenance) 5719-1959. According to which:

"A person is obligated to pay support for his minor children and the minor children of his spouse according to the Personal Status Law that applies to him . . . ."

The personal status law that applies to the parties is the Jewish Law.

6. The subject in this case is a female minor under the age of 6, therefore the laws that apply in our matter with regard to the Minor girl and the Defendant's obligation to pay her essential support, derive from the laws about very young children. According to which the father has an absolute support obligation toward their needs.

When the Minor girl reaches the age of six and up to the age of 15 the defendant is obligated, similarly to young children's support, to pay her essential support by virtue of the Chief Rabbinate Regulations of the year 5744, and with regard [to] needs beyond that the Parties are equally obligated by virtue of Charity Laws.

See for this matter Rabbi A. Graidy, N. Shalem, Child Support—Theory and Practice (Hukat Hamishpat Ltd., 5750-2005), pp. 25-26.

7. While ruling on a minor's support, when the court assesses the amount of support that a father has to pay his daughter, her needs, the father's income and financial capability, and the financial capability of the mother who has custody of

the minor will be taken into account. The support ruling will be decided by balancing the family members' income from all sources while considering all the means against the needs and establish a reasonable rate of support. (See for this matter: Appeal on Support 2433/04 Zinovol vs. Zinovol and others, Nevo Pool).

The capability of the father for the purpose of [a] support ruling is not determined only according to his limited income but according to his capability to use his skills and to increase his income not only from work but also from his potential to earn along with his assets (Civil Appeal 239/85 Amitzur vs. Amitzur, Judgments 40(1) 147; Civil Appeal 130/83 Price vs. Price, Judgments 38(1) 721).

8. The Plaintiff alleges that she earns between 3500 NIS – 3800 NIS a month from her work as production laborer in "Rei Cosmetic" company. She also alleges that since her return to Israel from the U.S. she lives, together with the Minor girl, crowded in her parents' home. According to the Plaintiff she and the Defendant have a common debt and she pays, according to the decision of the Head of the Execution Proceeding Office, 1000 NIS a month and another 1000 NIS a month to her parents as a repayment for their guarantee for the debt.

With regard to the Defendant's income the Plaintiff alleges that when he was working he earned about $4000 and in any event this is his potential earning.

8. [sic] As for the Defendant he alleges that his monthly income when he was working was about $2400. The Defendant claims that he was laid off from his work and he lives on unemployment benefit[s] in the amount of $900 per month (see section 47-48 to the Defendant Summaries) although that in Section 2 in his

summary the Defendant writes: "The Defendant lives in the U.S. and works as a hi-tech technician at Farrow Image, Inc."

Payment stubs attached to the statement of defense show that the Defendant earned in the past about $3500 per month.

In addition, the Defendant alleges that he is the one who takes care of all the needs of the Minor boy who lives with him in the U.S. and that the child support and expenses add up to $1000 a month and to this amount $2500 school tuition for the Minor boy is added.

9. As aforesaid, the Defendant has an absolute obligation to pay for his minor daughter's essential needs. The fact that he presently has no earnings is temporary and should be weighed accordingly.

Among the essential needs are Food, clothing, health, mandatory education expenses (basic). In addition, the father is obligated to pay the housing expenses of his minor daughter (Civil Appeal 52/87 Harel vs. Harel, Judgments 43 (4) 2001).

According to the evidence brought before me it was not proven that the Minor girl was accustomed to a high standard of living and there was no proof that she has needs beyond the essential ones that according to case law do not require proof. The cost of housing was not proven as the Plaintiff alleges that since her return to Israel and to date she lives crowded with the Minor girl at her parents' home where the Minor girl was born. The fact that the Minor girl lives in her grandparents' apartment does not negate the inclusion of housing payment (a

proportionate part of) in the support amount (Appeal on Support 101/98 (Haifa) <u>Hanuka vs. Hanuka</u>, Nevo Pool).

10. Therefore I rule that according to the evidence brought before me and according to the case law, the child support for the Minor girl shall be as follows:

a. The Defendant shall pay child support in the amount of 1200 NIS a month. This payment includes all of the Minor girl's essential expenses, except the payments due, listed below.

b. The Defendant will pay half of daycare and/or kindergarten plus after school care expenses. * * *

c. The Defendant will pay for the Minor girl's share in housing expenses and its upkeep in the amount of 400 NIS.

d. The Defendant will pay half of exceptional health expenses not covered by basic health care under law.

e. The Defendant will pay half of the cost of two summer camp sessions as long as he is not in Israel and/or as long as there are no visitation arrangements between him and the Minor girl. The cost of the camp will be according to the acceptable price charged by a local community center.

f. In addition to the child support, the Defendant is ordered to pay an amount of 750 NIS on September 1st of each school year starting in grade 1 and this is for his share of the Minor girl's educational needs. This amount is in addition to any educational grant that the Minor girl is entitled to receive from the National Insurance Institute.

[g]. The aforementioned support shall be linked to the consumer price index and shall be updated once every three months with no retroactive differentials, according to the index basis as known on the date of the decision. * * *

(Support Order attached to Doc. #1).

{¶ 10} Even if we accept Mr. Jenkins' argument that principles of comity do not apply and that the Memorandum of Understanding implicitly incorporates R.C. 3115.44(A)(5), we are unconvinced that he has a defense to enforcement due to an equal-protection or establishment-clause violation. The record reflects that the support order was issued by an Israeli civil family court as opposed to a religious court. "Where the parties are of the same religion, the civil family court will apply the relevant personal law of that religion but incorporate civil law protections, such as gender equality." *A Caseworker's Guide to Processing Cases with Israel*, IM-13-01, Part C: Incoming Child Support Packages from Israel to the U.S. at pg. 21.[4] With regard to child support, one practitioner in Israeli family law has explained:

Child support in Israel is determined by the relevant personal status law of each parent, according to the Law to Amend the Law of the Family (Maintenance) 5719-1959. The personal status law is that of the religious community with which he/she is ethnically affiliated, regardless of whether there is an active affiliation. In the case of Jewish residents, the law obligates only the father to pay the necessary

---

[4]"The federal Office of Child Support Enforcement (OCSE) develops Caseworker's Guides intended to assist with implementation of federal-level international child support agreements." U.S. Dept. of Health and Human Services Office of Child Support Enforcement Memo. IM-13–01 (April 15, 2013), available at http://www.acf.hhs.gov/programs/css/resource/a-caseworkers-guide-to-processing- cases-with-israel.

expenses of a child until the age of 15 years. Beyond that age, both parents can be obliged to support their minor children, according to the resources of each parent.

Despite the clear and absolute obligation under Jewish law for fathers alone to bear all necessary expenses of the child until the age of 15 years, the courts have begun to take a more egalitarian approach to child support. They have done so by attempting to eradicate the distinction between "essential" expenses and those categori[z]ed as "non-essential," as the mother can also be obligated to pay for the "non-necessities."

Two Supreme Court cases form the legal precedent for this change (*Chinboy v Chinboy* (Family Appeal 2433/04) and *Ohana v Ohana* (Family Appeal 5750/03)). Both hold that when determining child support the courts should require the mother to participate in essential support payments and not just in the non-essential. Courts are obliged to examine the mother's financial capabilities as well as the father's when awarding child support, and the obligation should be imposed on both. The result is that there is a trend for courts to minimi[z]e what is defined as essentials, to more evenly divide the obligation for child support.

Edwin Freedman, *Family Law in Israel: Overview*, Practical Law (Thompson Reuters) (available at http://uk.practicallaw.com/5-564-7346?source=relatedcontent#a854815).

{¶ 11}  In the present case, the family court in Israel cited the Jewish-law tradition that Mr. Jenkins was responsible for his daughter's essential support. Immediately thereafter, in paragraph seven of its ruling, the court opined that establishing a child-support order required

assessment and balancing of both parties' finances and the child's needs. The Israeli court also recognized the concept of imputed income. At paragraph eight, it proceeded to discuss the parties' respective incomes and expenses, including Mr. Jenkins' expenses caring for their son.[5] At paragraph nine, the court again noted Mr. Jenkins' "absolute obligation" to support his daughter. In the next sentence, however, it opined that his unemployment was temporary and should be "weighed accordingly."

{¶ 12}   Notwithstanding its reference to Jewish-law tradition, if the Israeli court actually intended to order Mr. Jenkins to pay all support for his daughter based strictly on his gender status as her father, it had no need to consider the parties' respective resources or to "weigh" the fact that Mr. Jenkins was only temporarily unemployed.  Indeed, if Mr. Jenkins' obligation to pay for his daughter's essential expenses really was absolute, none of the foregoing issues would have mattered, particularly in light of the family court's finding that she had no non-essential expenses. The fact that the family court considered the parties' incomes and expenses suggests it actually took the more egalitarian approach to child support discussed above despite its recitation of the relevant personal status law. This conclusion is further supported by the fact that the family court's primary support order of 1,200 shekels per month amounts to only about $331 based on exchange rates as of this writing. The family court imposed this relatively small support obligation despite the disparity between Mr. Jenkins' monthly income of $3,500 (based on pay stubs before his "temporary" unemployment) and the appellee's monthly income of 3,500 to 3,800 shekels (about $967 to $1,050).

{¶ 13}   After reviewing the support order, we do not find it so patently violative of equal

---

[5]The support order contains two consecutive paragraphs numbered eight. Both address the parties' respective finances.

protection or establishment-clause principles as to be unenforceable under the Memorandum of Understanding between the United States and Israel or under R.C. 3115.44(A)(5). Because the order was entitled to enforcement under the Memorandum of Understanding and was not unenforceable pursuant to R.C. 3115.44(A)(5), the trial court's reliance on principles of "comity" was unnecessary. Therefore, even if we assume, arguendo, that the trial court erred in citing comity, the error was harmless. Mr. Jenkins' first and second assignments of error are overruled.

{¶ 14} In his third assignment of error, Mr. Jenkins contends the trial court erred in enforcing the Israeli support order where the order failed to grant him an offset for his expenses in raising the parties' son. He argues that Ohio law requires such an offset and that the absence of one renders the foreign order unenforceable.

{¶ 15} We find the foregoing argument unpersuasive for at least three reasons. First, it is not clear that Mr. Jenkins requested an offset in connection with the Israeli support order. The order itself simply notes that "the subject matter jurisdiction and the proper forum to discuss any claim related to Minor boy living in the U.S. is with the Court in the State of Ohio[.]" (Support Order attached to Doc. #1 at ¶ 4). Without any context, we cannot determine from this statement whether Mr. Jenkins actually sought an offset in connection with the foreign support order. Therefore, we cannot say the Israeli court's failure to grant one makes its order unenforceable. Second, even if we assume that Mr. Jenkins did seek an offset in the proceeding in Israel, he presumably could have appealed there from the adverse jurisdictional ruling. Consequently, even if the Israeli family court erroneously refused to consider an offset, we are unpersuaded that such

an error would make its support order unenforceable here.[6] Third, an avenue for obtaining the equivalent of an offset may exist in Ohio. In light of (1) the Israeli court's finding that it lacks subject-matter jurisdiction to "discuss any claim" related to Mr. Jenkins' son and (2) Mr. Jenkins' custody of the boy in Ohio,[7] we see no reason why he cannot simply seek child support for his son in Ohio much like the appellee did for their daughter in Israel.[8] Res judicata would not preclude Mr. Jenkins from doing so given the Israeli court's refusal to hear any claim related to the boy. If Mr. Jenkins obtains a child-support order for his son, he then could seek to have it enforced against the appellee in Israel, or offset it against the foreign order in Ohio.[9] For the foregoing reasons, we do not agree that the lack of an offset in the Israeli support order renders it unenforceable in Ohio. Accordingly, the third assignment of error is overruled.

{¶ 16}   The trial court's judgment is affirmed.

---

[6]Conversely, if the Israeli court did lack jurisdiction to consider any claim related to the parties' son, then, as explained more fully above, the proper place for Mr. Jenkins to seek child support must be here in Ohio.

[7]In his appellate brief, Mr. Jenkins represents that he has custody of his son in Ohio.

[8]Although the issue is beyond the scope of this appeal, we note that direct modification of the Israeli support order itself may be unavailable in Ohio under R.C. Chapter 3115. Pursuant to R.C. 3115.48, a foreign support order cannot be modified in Ohio unless either of the following applies: "(1) The child, the individual obligee, and the obligor subject to the support order do not reside in the issuing state, a petitioner who is a nonresident of this state seeks modification, and the respondent is subject to the personal jurisdiction of the tribunal of this state"; or (2) "The child, or a party who is an individual, is subject to the personal jurisdiction of the tribunal of this state and all of the parties who are individuals have filed written consents in the issuing tribunal for a tribunal of this state to modify the support order and assume continuing, exclusive jurisdiction over the order. However, if the issuing state is a foreign jurisdiction that has not enacted a law or established procedures substantially similar to the procedures under sections 3115.01 to 3115.59 of the Revised Code, the consent otherwise required of an individual residing in this state is not required for the tribunal to assume jurisdiction to modify the child support order."

[9]For purposes of enforcing an Ohio child-support order, it appears that Israel's courts generally would defer to Ohio law. *See A Caseworker's Guide to Processing Cases with Israel*, IM-13-01, Part B: Outgoing Child Support Packages from the U.S. to Israel at pgs. 10-20.

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

Copies mailed to:

Christopher A. Murray
Joseph C. Lucas
John R. Glankler
Hon. Steven L. Hurley